<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SATHEESH TUMMALA,

                  Plaintiff,

v.

CHRISTINE WORMUTH, Secretary of the
United States Army,

                  Defendant.

Civil Action No. 22-7619 (SDW) (JRA)

**OPINION**

March 7, 2024

**WIGENTON**, District Judge.

    Before this Court is Defendant Christine Wormuth's, Secretary of the United States Army, motion to dismiss Plaintiff Satheesh Tummala's Complaint, (D.E. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 12.) Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED**.

## I.    <u>BACKGROUND</u>

    *Pro se* Plaintiff, Satheesh Tummala, identifies as a Brown Asian man and claims India as his national origin. (D.E. 1 ¶ 11.) He was employed by the U.S. Army Armament Research development & Engineering Center ("ARDEC") as an IT Specialist from August 25, 2014 to April 24, 2015. (*Id.* ¶ 12.) Plaintiff was certified in Systems, Applications & Products ("SAP") Associate Enterprise Architect. (*Id.* ¶ 13.) Plaintiff was supervised by Brian Coombs (first level supervisor), Scott Miller (second level supervisor), and George Albinson. (*Id.* ¶ 18.a.i.) He was

born in August 1970 and was 44 years old when Defendant terminated his employment.   (*Id.* ¶ 11.)  Plaintiff alleges that several times between August 2014 and April 2015, his supervisor Mr. Coombs and team member Mr. Chou made comments about his age.  (*Id.* ¶ 18.a.)  Plaintiff alleges that between September 2014 and April 2015, he "was given [a] greater and heavier workload in comparison to other IT Specialists[.]"  (*Id.* ¶ 18.b.)  Plaintiff alleges that on September 7, 2014, Chou changed his Learning Objectives and Readiness Assessment ("LORA") login credentials without informing him which prevented him from accessing the LORA system and affected his ability to advance his career.  (*Id.* ¶ 18.c.)  On September 10, 2014, Coombs introduced Plaintiff to the LORA team members with "false information that Plaintiff had come from a small company with [] insignificant experience."  (*Id.* ¶ 18.d.)

    In October 2014, Chou allegedly informed management that Plaintiff was working on a task that had originally been pending with Chou "for a long time" to shift the blame of the task being delayed and incomplete from Chou to Plaintiff.  (*Id.* ¶ 18.e–f.)  Plaintiff reported Coombs to Milagros Young, the Division Chief, for allegedly paying for government employees' lunches.  He also reported Coombs for "misusing the government paid time for his contract work, reassigning his work to government employees, leaving early from [the] office after lunch on Thursdays and coming [in] late to [the] office on Mondays."  In response, Plaintiff was told that these instances were ethical issues and that he should not be talking about them with Young or anybody else.  (*Id.* ¶ 18.g.)  Plaintiff alleges that Chou "intentionally misguided" him on one of his tasks which he construed as an intentional act to make "Plaintiff fail in his work."  (*Id.* ¶ 18.h.)  In January 2015, Chou allegedly "yelled, cursed, and humiliated Plaintiff in front of the whole CSC Basis team, while [Chou] was checking a 'liveCache' migration work status."  (*Id.* ¶ 18.i.)  Also in January 2015, Young allegedly "asked Plaintiff to sign a [] document containing false statement[s] during

the six-month performance appraisal meeting[.]"  In February 2015, Chou asked Plaintiff to leave a product demonstration meeting in front of a group of other contractors and the entire SAP Basis team.  (*Id.* ¶ 18.m.)  Plaintiff alleges that he was given extra work "so that he [would not be able to] concentrate on his CompTIA Security+ exam" and was denied an opportunity to study during work hours.  Plaintiff ultimately failed the exam. (*Id.* ¶ 18.o.)  He construed these acts as "another retaliation event" aimed at making him fail at his work.  (*Id.* ¶ 18.n.)  Plaintiff alleges that on February 23, 2015, in a meeting with Young and Alison Schwier, the Business Transformation and E-Systems ("BTES") Director, Robert Trifiletti, Supervisory Engineer, "presented a one-page document containing false statements to Plaintiff to sign without providing him the sufficient opportunity to review prior to the meeting or prior to signing."  (*Id.* ¶ 18.k.)  Plaintiff signed the document "[u]pon threat of termination[.]"  (*Id.* ¶ 18.l.)

Plaintiff alleges that on April 8, 2015, "Chou shouted at [him] for no reason."  (*Id.* ¶ 18.p.)  On April 15, 2015, Plaintiff was questioned about his studying during work hours and on April 23rd, he was terminated "for refusing to complete an assigned task, for questioning why [he] had been given specific tasks, and for not being a cooperative team player." (*Id.* ¶ 18.p–q.)  Plaintiff alleges that the April 23rd meeting "was requested by [him] in order to complain about harassment he experienced in the [workplace]."  (*Id.* ¶ 18.r.)

## II.    <u>PROCEDURAL HISTORY</u>

On June 24, 2015, Plaintiff filed his "Complaint of Discrimination" with the EEO office.  (D.E. 1 ¶ 24.)  On August 11, 2020, Administrative Law Judge Julie Schmid issued a Corrected Decision and Order Entering Judgment in favor of Defendant.  (*Id.* ¶ 34.)  Plaintiff subsequently appealed the decision with the Office of Federal Operations ("OFO").  A Final Agency Decision issued on

February 18, 2021 and on March 31, 2022, the OFO issued a decision, denying the appeal. (*Id*. ¶ 36 & 39.)

Plaintiff filed the instant action on December 27, 2022 alleging Defendant violated his rights under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA").  (D.E. 1.)  On September 5, 2023, Defendant moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6).[1]  The parties timely completed briefing.  (D.E. 12,14, & 17.)

## III.   <u>LEGAL STANDARD</u>

When considering a motion to dismiss under Rule 12(b)(6), this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 23 (3d Cir. 2008) (citation omitted).  For a complaint to be adequate, it must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id; see also Phillips*, 515 F.3d at 232.  If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2).  *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169–70 (3d Cir. 2013).

---

[1] Fed. R. Civ. Pro 12(b)(6)

IV.   **DISCUSSION**

   **a.** *Title VII*

"Title VII prohibits an employer from discriminating based on an employee's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a), and from retaliating against an employee for complaining about, or reporting, discrimination or retaliation, *id*. § 2000e–3(a)." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017).  To make out a prima facie case of employment discrimination based on race or national origin, Plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) he was discharged under circumstances that raise an inference of discrimination.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir.2003).

Based on the Complaint, Plaintiff satisfies the first three elements: he identifies as a Brown, Asian man, and claims India as his national origin, thus a member of a protected class; Plaintiff had prior relevant work experience and certifications and there is no dispute as to whether Plaintiff was qualified for his position; and Plaintiff's employment was terminated which is an obvious adverse employment action.  However, Plaintiff has not alleged any facts to support an inference that his termination was at all related to his protected status.  The Complaint does not identify a single instance in which Plaintiff, directly or indirectly, was discriminated against in the workplace because of his race, color, or national origin.  Indeed, the Complaint describes instances where he was told that he could not study for his CompTIA Security+ exam during work hours and was later confronted for doing it anyway, but there are no allegations that this bar was because of his protected status or any allegations that he was treated differently than other employees.  Similarly, Plaintiff raises allegations about the type and amount of work he was given but he does not allege

that his work differed in any way from that of other employees or that his work assignments were a result of discrimination.

Plaintiff describes instances of being shouted at by Chou for "no reason." It cannot be reasonably inferred that the unknown reason for the shouting was motivated by discrimination and there are no facts to support that inference.  Further, Plaintiff does not allege that Robert Trifiletti, the supervisor who issued the notice of removal, considered Plaintiff's protected characteristics at the time of termination.  Plaintiff was ultimately terminated "for refusing to complete an assigned task, for questioning why [he] had been given specific tasks, and for not being a cooperative team player." *See supra* at 2.  Plaintiff does not dispute these reasons and instead describes instances where he was insubordinate, questioned the decisions of leadership, and complained about his assignments.  Plaintiff alleges that the April 23, 2015 meeting that resulted in his termination was originally requested by him "in order to complain about harassment he experienced in the [workplace]," but he does not provide any details or allege any facts about the harassment.  *See supra* at 2. Nowhere in the Complaint does Plaintiff describe instances of discrimination based on his race or other protected characteristics.  Consequently, Plaintiff has not made a prima facie case for employment discrimination under Title VII and so this claim must be dismissed.

**b.**  *ADEA*

Plaintiff, 44 years old at the time of his termination, asserts that his termination was, in part, due to his age.  "The elements of a prima facie case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."

*Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 641 (3d Cir. 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir.2013)).

"Once the plaintiff has successfully established a prima facie case creating an inference of discrimination, the burden shifts to the employer who must 'articulate a legitimate nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir.1999)).  This second step "does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action. Instead, the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

"If the employer satisfies this second step, the burden shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Id.* (citing *Burton*, 707 F.3d at 426–27).

Plaintiff satisfies the first three elements; he was 44 at the time of his termination and there is no dispute as to whether Plaintiff was qualified for his position.  However, Plaintiff has not alleged that he was replaced by someone significantly younger than him.  Indeed, the Complaint does not allege a single instance in which Plaintiff was discriminated against because of his age or that his age was a factor in his termination or even mentioned in any of the verbal altercations he had with leadership and team members.  Because Plaintiff has not made a prima facie case for age discrimination under the ADEA, the burden will not shift to Defendant.  Consequently, Plaintiff's ADEA claim suffers the same fate as his Title VII claim and must also be dismissed.

**V.**     **<u>CONCLUSION</u>**

For the reasons set forth above, Defendant's motion to dismiss the Complaint is GRANTED, without prejudice.  Plaintiff shall have thirty (30) days from the date of the Order to amend his Complaint.   An appropriate order follows.

<u>/s/ Susan D. Wigenton</u>
 **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:       Parties
             Jose R. Almonte, U.S.M.J.